EDWARD T. DRURY, WILLIAM H. IJAMS, JR. AND SAMUEL M. RANKIN *vs.* WILLIAM H. H. YOUNG.

*Memorandum of Sale under section* 17 *of the Statute of Frauds—Place of Signature—When name in Print is a sufficient Signing—Oral evidence of Commercial usage.*

The note or memorandum in writing of a contract of sale, required by the seventeenth section of the Statute of Frauds to be made and signed by the party to be charged, need not be delivered to the other party—delivery is not essential to its validity.

The place of the signature in the memorandum of sale, required by the seventeenth section of the Statute of Frauds, is immaterial; and the name may as well be printed as written. The name in print is a sufficient signing if it be recognized and appropriated as his, by the party.

At the trial of the case the following paper was offered as evidence of the contract of sale, the words preceding " Baltimore, Aug. 27th, 1881," being in print:

Drury, *et al. vs.* Young.

Office of

DRURY, IJAMS & RANKIN,

*Wholesale and Retail Grocers, and Dealers in Flour, Feed and Fertilizers, cor. Gay and High Streets.*

E. T. DRURY,

W. H. IJAMS, JR.,

S. M. RANKIN, Jr.        BALTIMORE, Aug. 27th, (26th) 1881.

Sold W. H. H. Young & Co., 2,500 cans, say 5,000 doz. C. C. C. tomatoes, @ $1.10 p'r dozen, *cash;* cars at Phila. Depot, Balto., Md.

    5,000 dozen, @ $1.10 c.........................$5,500 00

HELD: That the foregoing paper was a sufficient note or memorandum of the bargain, to satisfy the seventeenth section of the Statute of Frauds.

The following letter addressed by the defendants to the plaintiff, was also offered in evidence:

Office of

DRURY, IJAMS & RANKIN,

*Wholesale and Retail Grocers, and Dealers in Flour, Feed and Fertilizers cor. Gay and High Streets.*

E. T. DRURY,

W. H. IJAMS, JR.,

S. M. RANKIN, JR.        BALTIMORE, Aug. 29th, 1881.

Mess. W. H. H. Young & Co.:

Gents:—We regret to say, it is impossible for the Chase's Canning Co. to furnish the 2,500 cases, 3 c. tomatoes purchased of us on 27th (26th) inst., @ 1.10 per doz. Nor do we think it possible to fill order this season, as the fruit cannot be procured.

        Hoping this may be entirely satisfactory,

                We are very respectfully,

                        DRURY, IJAMS & RANKIN.

HELD: That if the aforementioned memorandum of sale were insufficient of itself, the foregoing letter which in its terms refers to the memorandum, would certainly be sufficient when taken in connection with it, to meet the requirements of the Statute of Frauds.

In a mercantile transaction, where the terms of a written instrument are technical or equivocal on its face, oral evidence is admissible to explain the commercial usage.

APPEAL from The Superior Court of Baltimore City.

This suit was brought by the appellee against the appellants. The declaration charged that the plaintiff, on the 26th day of August, 1881, bargained and agreed with the defendants, to buy of them, and the defendants then sold to the plaintiff twenty-five hundred cases (five thousand dozen) of C. C. C. 3 lb. first quality, country packed tomatoes at $1.10 per dozen, to be delivered on cars at the Philadelphia Depot, within a reasonable time after the date of said contract, and to be paid for by the plaintiff to the defendants, cash on delivery, and one and a half per cent. to be deducted for brokerage, and in consideration thereof, and that the plaintiff had then undertaken to accept and receive the said tomatoes and to pay the defendants for the same at the price aforesaid; defendants then promised the plaintiff to deliver the said tomatoes to him as aforesaid; and further, that though the plaintiff was at all times from the making of the said bargain and sale as aforesaid, ready and willing to receive and accept the said tomatoes, and to pay the said defendants therefor upon delivery the stipulated price, yet the defendants subsequently, to wit, on the twenty-ninth day of August, 1881, absolutely refused to deliver the said tomatoes to the plaintiff, then or at any other time, and absolutely refused to perform then, or at any other time, each and all of the terms of the said contract by them to be performed, which said refusals they, then and there, communicated to the said plaintiff, by reason of which said refusals to perform their contract by the defendants, the plaintiff was greatly damaged.

The plaintiff filed with the *narr.*, which contained three counts, the following account:

Drury, *et al. vs.* Young.

BALTIMORE, Aug. 31st, 1881.

Mess. Drury, Ijams & Rankin,

    To W. H. H. Young & Co.,    Dr.

To am't difference in price between goods purchased of you, on 26th inst., and goods purchased to fill same order, you having failed to do so, viz.,

| | | | |
|---|---|---|---|
| 2,000 cans 3lb tomatoes, 4,000 doz. @ 1.35 net cash, | 5,400 | 00 |
| 500 " 3lb " 1,000 " " 1.25 " " | 1,250 | 00 |
| | 6,650 | 00 |

CR.

| | | |
|---|---|---|
| 2,500 c's 3lb c's tomatoes, 5,000 doz. @ 1.00 | 5,500 | 00 |
| Less 1 o-o cash     55.00 | | |
| Less 1 o-o brokerage 55.00 | 110 | 00 |
| | 5,390 | 00 |
| | 1,260 | 00 |

The defendants pleaded that they never were indebted as alleged, and that they did not promise as alleged.

The defendants took five exceptions,—four to matters of evidence, and the fifth was taken to the rulings of the Court upon their prayers. The insertion of the third exception only, is deemed necessary.

*Third Exception.*—The plaintiff then proposed to ask a witness, who had testified that he was a merchandize broker, whether there was an established custom and usage with reference to discount on sales for cash, and whether, or not, there was any established custom in regard to the allowance of brokerage when goods were sold to a broker personally; but the defendants objected to the question. The Court said "receive it, subject to exceptions." The defendants said they did not wish this to go in subject to exceptions, but excepted to the ruling of the

Court then. The Court said it would let the testimony in, subject to exceptions. To the action of the Court in refusing to exclude the testimony, but admitting it subject to exceptions, the defendants excepted.

The jury rendered a verdict for the plaintiff, for $750, and judgment was entered accordingly. The defendants appealed.

The cause was argued before BARTOL, C. J., STONE, MILLER, ALVEY, ROBINSON and RITCHIE, J.

*Orlando F. Bump,* for the appellants.

*B. Howard Haman,* and *Edgar H. Gans,* for the appellee.

STONE, J., delivered the opinion of the Court.

One of the questions presented for our consideration in this case is, whether the "note or memorandum in writing" required by the seventeenth section of the Statute of Frauds, must be delivered to the other party thereto. It is apparent from the evidence that the note or memorandum in writing relied on in this case, was made by the bookkeeper of the appellants by the direction of one of them, and by the bookkeeper placed in their safe, among other papers, where it remained from the 27th of August, 1881, the day on which it was written, until it was produced in Court, at the trial of the case in February, 1882. There is no evidence that this note was ever seen by the appellee, or even its existence known to him until the trial; and it certainly never was delivered to him, or went out of the possession of the appellants, until produced in Court. It is strongly insisted by the appellants that the Statute is not gratified without a *delivery* of this note or memorandum. It must be borne in mind that the Statute of Frauds was not enacted for cases where the parties have

Drury, *et al. vs.* Young.

signed a written contract; for in these cases, the common law affords quite a sufficient guarantee against frauds and perjuries, as is provided by the Statute. The intent of the Statute was to prevent the enforcement of *parol* contracts, unless the defendant could be shown to have executed the alleged contract by partial performance, or unless his signature to some written note or memorandum of the bargain--not to the bargain itself, could be shown.

The existence of the note or memorandum presupposes an antecedent contract by parol, of which the writing is a note or memorandum. *Benjamin on Sales, sec.* 208.

Now the Statute itself is entirely silent on the question of the delivery of the note or memorandum of the bargain, and its *literal* requirements are fulfilled by the existence of the note or memorandum of the bargain, signed by the party to be charged thereby. The Statute itself deals exclusively with the existence and not with the custody of the paper.

If the non-delivery of the note, does not violate the letter of the Statute, would it violate its spirit and be liable to any of the mischiefs which the statute was made to prevent?

The Statute was passed to prevent fraud practiced through the instrumentality of perjury. It was passed to prevent the defendant from suffering loss, upon the parol testimony of either a perjured or mistaken witness, speaking of a bargain different from the one in fact made. It made the defendant only liable when a note or memorandum of the bargain signed by himself was produced at the trial.

If produced from the defendant's own custody, it guards against the mischief that the Statute was passed to prevent, just as well as if produced from the custody of the plaintiff. The plaintiff is the one likely to, suffer by leaving the evidence of his bargain in the hands of the defendant—not the defendant himself.

The Statute of Frauds is an English Statute, and in the absence of any express adjudication of our own Court, we naturally look to the English Courts as the best expounders of their own Statute, and gather from them the principles which should guide us in construing it.

In the case of *Gibson vs. Holland*, 1 *Law Reports, C. P.*, 1, the only note or memorandum of the bargain was a letter addressed by the defendant to his own agent; the Court decided *that* to be sufficient, and ERLE, C. J., in delivering his opinion, said:

" But the objection relied on is, that the note or memorandum of that contract, was a note passing between the defendant, the party sought to be charged, and his own agent, and not between the one contracting party and the other."

" The object of the Statute of Frauds, was the prevention of perjury in the setting up of contracts by parol evidence, which is easily fabricated. With this view, it requires the contract to be proved, by the production of some note or memorandum in writing. Now, a note or memorandum is equally corroborative, whether it passes between the parties to the contract themselves, or between one of them and his own agent. Indeed, one would incline to think that a statement made by the party to his own agent, would be the more satisfactory evidence of the two."

In *Johnson vs. Dodgson*, 2 *Meeson & Welsby*, 653, the defendant made the note of the sale *in his own book*, and got the agent of the plaintiff to sign it, and the defendant retained the book in his own possession.

It was held by the Court, that the note or memorandum was sufficient, and the plaintiff recovered. No notice appears to have been taken by the Court in their opinion, of the fact that the memorandum had not been delivered, but had been retained possession of by the defendant. But in the argument of the case, counsel of defendant said: "Suppose the defendant had simply made a memo-

randum in his own book, that on such a day the plaintiff sold to him; would that be sufficient?" To which PARKE, J., replied, "If he meant it to be a memorandum of a contract between the parties, it would."

From these authorities, and the reasons upon which they were decided, we are of opinion, that delivery is not essential to the validity of the note or memorandum of sale.

The next question which arises is, whether the note or memorandum in this case, is signed by the defendant? The note is in these words:

Office of

DRURY, IJAMS & RANKIN,

*Wholesale and Retail Grocers, and Dealers in Flour, Feed and Fertilizers, cor. Gay and High streets.*

E. T. DRURY,

W. H. IJAMS, JR.,

S. M. RANKIN, JR.          BALTIMORE, *Aug.* 27*th*, 1881.

Sold W. H. H. Young & Co., 2,500 cans, say 5,000 doz. C. C. C. tomatoes, @ $1.10 p'r doz. cash; cars at Phila. Depot, Balto., Md.

          5,000 dozen, @ $1.10 c.....................$5,500.00

It appears that all the words, preceding the words, "Baltimore, August 27th, 1881" were printed, and that the printed part, was a letter head, and the written portion under the heading. The names of the defendants being in print, and at the beginning of the note, the question is, whether it is a sufficient signing?

It is entirely immaterial in what part of the instrument the name of the party to be charged appears, if it is put there by him, or by his authority. *Higdon vs. Thomas,* 1 *H. & J.,* 152.

This decision of our Court settles the question that the *place* of the signature in the memorandum is immaterial, and the English cases are equally emphatic, that the

Drury, *et al. vs.* Young.

name may as well be printed as written, if the printed name is adopted by the party to be charged.

In *Schnider vs. Norris,* 2 *Maule & Selwyn,* 286, Lord ELLENBOROUGH decided, that the appropriation and recognition of a printed name was sufficient.

It is therefore a sufficient signing, if the name be in print, and in any part of the instrument, provided that the name is recognized and appropriated by the party to be his. The note or memorandum in this case upon its face, contains all the necessary terms of a complete bargain.

The names of the vendors and purchasers, the quantity and quality of the goods contracted for, the price at which they were sold, and the terms of sale, and the place of delivery, are all clearly expressed therein, and make a sufficiently good memorandum required by the Statute.

If the above mentioned memorandum was insufficient of itself, the following letter addressed by defendants to plaintiff, and which sufficiently refers in its terms to the former note or memorandum, would certainly be sufficient when taken in connection with it, to take this case out of the Statute :

Office of

DRURY, IJAMS & RANKIN,

*Wholesale and Retail Grocers, and Dealers in Flour, Feed and Fertilizers, cor. Gay and High Streets.*

E. T. DRURY,

W. H. IJAMS, JR.,

S. M. RANKIN, Jr.　　　BALTIMORE, Aug. 29th, 1881.

Mess. W. H. H. Young & Co. :

Gents:—We regret to say, it is impossible for the Chase's Canning Co. to furnish the 2500 cases, 3 c tomatoes purchased of us on 27th inst., @ 1.10 per dozen. Nor do we think it possible to fill order this season, as the fruit cannot be procured.

Hoping this may be entirely satisfactory,

We are very respectfully,

DRURY, IJAMS & RANKIN.

There is no dispute as to the signature of the defendants to this letter, or that it was addressed to the plaintiff, and without the aid of any parol evidence it can easily be connected with the memorandum of 27th August, 1881.

That the letter refers to the same bargain or sale that the memorandum does, is sufficiently shown upon the face of it, as it mentions the same sort of goods, the same quantity and price, and refers to the same date.

The two papers can then be connected with sufficient certainty, without the aid of any extrinsic evidence, and together make a memorandum, meeting the requirements of the Statute, even if the memorandum of sale itself were insufficient.

We have then a sufficient note or memorandum of a bargain, provided the jury were satisfied that an antecedent parol bargain, substantially agreeing with the said note or memorandum, had been made between plaintiff and defendants.

Whether such antecedent parol bargain had been made or not, was for the jury to decide, and it was also for the jury to determine the question, whether the printed names were adopted and appropriated by the defendants as theirs, as well as the fact of the memorandum being the act of their authorized agent.

There are eighteen prayers in the record, many of them with shades of difference, so nice, that it is difficult for any one, except the drawer, to see in what the difference consists. The first, sixth, seventh, twelfth, thirteenth and fourteenth prayers of the defendants relate to the insufficiency of the memorandum, considered in itself, and from what we have already said, were properly rejected. The fifteenth prayer of the defendants as to a variance between the oral bargain and the memorandum was substantially covered by the eighteenth and nineteenth prayers, which were granted, and its refusal is therefore no ground of reversal. The second prayer of the defendants was prop-

erly refused. The issue in this case was whether there was a contract upon which the plaintiff and defendants had agreed, but there is no issue involving the fact of negotiations only, and the withdrawal of the defendants from such negotiations, and the terms of the prayer were calculated to mislead the jury.

The objection of the defendants to the testimony offered in the second bill of exceptions ought to have been sustained; but as it does not appear what evidence the parties asked gave, if any, the error does not furnish sufficient ground for reversal.

The evidence objected to in the defendant's third bill of exceptions, was admissible.

In a mercantile transaction, where the terms of a written instrument are technical or equivocal on its face, oral evidence is admissible to explain the commercial usage. *Williams vs. Woods & Bridges,* 16 *Md.,* 220.

The question presented by the defendants' first bill of exceptions, has been argued by his counsel with great force and ability, both upon reason and authority. We must, however, decline to express an opinion upon the subject-matter of that exception, for the very obvious reason that no decision that we could now make, upon the question presented in the exception, could have any effect upon this case.

The question presented by the first exception was whether the Court below were warranted in ordering the production of the paper mentioned therein, against the protest and objection of the defendants. *But they did produce the paper.*

It may be that the defendants are right in their hypothesis, and that the Court below were in error in ordering its production, and that it has *properly* no place in this record. *But it is in this record,* and we have no power to eliminate it therefrom.

The plaintiff has already received the benefit from the production of the paper, and we know of no way in which we can now deprive him of that benefit.

We would be unable, by a reversal of this judgment and sending the case back for trial, to place the defendants in the same situation that they were before they produced the paper. By their own act they have rendered that impossible. For the purpose of this case, the paper is no longer a private paper, but is in the possession of the Court and jury, and has been duly delivered to them by the defendants, and in their possession, for all the purposes of this suit, it must now remain. It was at the option of the defendants to have refused to produce the paper at the trial, and take the risk of a judgment by default, if the Court below should have determined to render one against them, and upon an appeal from such judgment the question would have been properly before us.

*Judgment affirmed.*

