[No. 564. Decided February 2, 1893.]

F. C. TINGLEY, *Appellant*, v. BELLINGHAM BAY BOOM COMPANY, *Respondent*.

LOGS AND LOGGING — LIABILITY OF BOOM COMPANY — DAMAGES — AGENCY — RATIFICATION OF CONTRACT — STATUTE OF FRAUDS — COSTS.

Under § 4 of the act of March 17, 1890, requiring boom companies to "catch, hold and assort the logs and timber products of all persons requesting such service," etc., a written contract signed by the boom company is not essential to render it liable for the loss of logs consigned to the company by the owner.

In an action by a logger to recover for the loss of logs consigned to a boom company, there can be no recovery for loss of profit in operating his logging camp nor for injury to his financial credit.

An allegation by a boom company, in a mandamus proceeding against another boom company, that it had a contract with a certain individual for driving his logs, is a sufficient admission of the ratification by the corporation of the act of one assuming to be its agent in the making of such contract.

A contract is signed, within the meaning of the statute of frauds, when the name of the party to be charged is written by him or an authorized agent anywhere in the contract.

Where the appellant himself prepares the transcript and is charged only half price by the clerk for examining and certifying the same, he can recover as costs merely the sum paid to the clerk, and is entitled to nothing on account of his own labor upon the transcript.

*Appeal from Superior Court, Whatcom County.*

*Harris, Black & Leaming*, for appellant.

*Thomas G. Newman*, for respondent.

The opinion of the court was delivered by

STILES, J.—We are not advised upon what ground the court below sustained the defendant's motion for a nonsuit, but, whatever may have been the ground, we think the facts in this case, as they appear from the testimony,

should have been submitted to a jury under proper instructions.

The complaint contains two causes of action, which were improperly united, but no objection was made to the complaint upon that ground, and no criticism can now be made of the course of the plaintiff in making the improper joinder.

The defendant was a corporation organized in pursuance of the act of March 17, 1890 (Laws, p. 470), entitled "An act to declare and regulate the powers, rights and duties of corporations organized to build booms and to catch logs and timber products therein." It appears that the boom of the defendant was built at the mouth of the Nooksack river, in Whatcom county. At a point higher up the river, a rival concern, known as the "Nooksack River Boom Company," had constructed another boom. The defendant, in order to fully secure the patronage of certain loggers up the Nooksack river, procured from several of them, on the 24th day of June, 1890, a written document, which in the case has been termed a "contract." The plaintiff was one of the signers, and the instrument took the form of a mutual agreement. The preamble of this document recites that the signers are in the business of driving logs down the Nooksack river; that there are no proper facilities at the present time for catching and taking care of logs at the mouth of the river; and that the defendant proposes to erect a boom at the mouth of the said river for the purpose of catching, handling and securing logs; and then proceeds as follows:

"Now, therefore, in order to encourage and assist the construction of the said boom by the said company, and to insure the safe and economical handling of such logs as we may run down the Nooksack river, we, the undersigned, hereby undertake and agree that so soon as the said Bellingham Bay Boom Company may construct a boom, and notify us that it is ready to receive and take care of our

logs, that we will consign to said company all of the logs which we may put into the Nooksack river for the purpose of being run into Bellingham Bay; and it is further agreed upon the part of the said boom company that it will, as soon as practicable, construct said boom, receive and take care of the said logs, in all manner complying with the laws of the State of Washington in that respect, and that it will make such boomage charges to the persons to this agreement as is common and customary with other loggers consigning logs to booms, and no other or further charges.''

This instrument was not signed by the defendant, or by any person upon its behalf, but it was delivered to one who claimed to act as and who certainly was in fact the authorized manager of the defendant, and it was by him transmitted to his company, and it was undoubtedly acted upon by all parties for many months. A great deal of force was expended by the plaintiff in proving that this paper was the contract of the defendant, and by the defendant in endeavoring to evade its effect as a contract, on account of the failure of its officers to affix the signature of the company to it; but it seems to us that it was wholly immaterial whether this instrument was signed by the defendant or not. Let it be remembered that this was a statutory boom corporation, whose works were at the mouth of the Nooksack river. Section 4 of the act under which this corporation was organized provides as follows:

''After such work shall have been constructed, such corporation shall catch, hold and assort the logs and timber products of all persons requesting such service, upon the same terms and without discrimination: . . . *Provided*, That it shall be the duty of any corporation operating a boom at the mouth of any river, to catch and hold, assort, boom and raft all logs and timber products, except such as may be already in charge of its owner or his agents, without request of the owner or owners, and shall have the right to charge and collect tolls not to exceed seventy-five cents per thousand feet for such service.''

Under this statute it was immaterial whether this defendant had any contract or request, either oral or written. Any logs coming down the Nooksack river, not in charge of their owner or his agents, it was bound to catch and hold, raft and boom, as the law required.    Failing to do this, it was liable to the penalties prescribed by §§ 7 and 8 of the act.

Now it was alleged in this case that large quantities of plaintiff's logs were allowed by this company to escape to the open waters of Puget Sound, and to be there lost; and the uncontradicted proof is, that some logs belonging to the plaintiff did escape and become scattered and lost.    The proofs were not altogether satisfactory as to whether these logs that escaped actually passed the boom of the defendant or not.    Some of them came down the river and were stopped by the arbitrary action of the Nooksack River Boom Company (the upper company) and held under a claim for boomage for a time; whether rightfully or wrongfully is no matter.    It seemed to be insinuated by the cross examination of witnesses that it was through the action of the Nooksack company that these logs escaped to the open sea through a slough; but it remains unexplained, so far as we are able to ascertain from the case, why the escaped logs must not have passed the boom of the defendant on their way down the river to the waters of the Sound.    It may be that there is some explanation not apparent in the case which the defendant may be able to offer upon a retrial, but the main point must stand that, if these logs passed the waters assumed to be controlled by the defendant for the purpose of boomage, it was its duty, both to the plaintiff and to the state, which is interested in not having the navigation of its waters made dangerous by floating logs, to catch them as they passed, and, to save itself from responsibility if they had passed its boom, to pursue, catch and return them.

The plaintiff sought to prove a great many elements of damage which were rightly excluded. He claimed that, by reason of defendant's permitting his logs to escape and be lost, he not only lost their sale, but ran his logging camp without profit, and was finally compelled to shut it down, to the injury of his financial credit, etc., and he appeals to *Skagit, etc., Lumber Co. v. Cole*, 1 Wash. 330 (26 Pac. Rep. 535), to sustain his right to recover all such damages, because the defendant knew of his situation; but there is nothing in the case to show that, if this was a contract entered into between the parties, any such matters were in contemplation by either of them. Nor do we think the statute was intended to cover anything more than the natural and ordinary damages resulting from failure of boom companies to perform the duties required of them thereby. In Cole's case, the whole operation of logging, and the furnishing of supplies therefor, were covered by the contract; but here the marketing of the logs was the only matter between the parties.

The second cause of action does depend upon a contract. The defendant apparently included in its business that of driving logs down the Nooksack river. Therefore, as soon as it got its works in order it procured, on the 20th day of August, 1890, from the plaintiff and other loggers, an instrument in which it was named as a party, whereby it agreed, in consideration of fifty cents a thousand feet, to drive to its boom at the mouth of the Nooksack river such logs as the plaintiff and other signers should place in the river at any time during two years from the date of the instrument. The agreement stipulated that it should begin at the next driving stage of water in the river occurring after September 19, 1890, and that it should drive not less than twice a year, provided there were stages of water sufficient therefor. There was a provision that the amount of logs driven should be ascertained at its boom by the usual

method of scaling, by a competent scaler furnished by the
company, the company to have a lien upon all logs driven
for the unpaid driving charges.    Then there was a very
important clause of the agreement stipulating that "all logs
left by the party of the first part (the company), and not
driven clean, shall be scaled back where they lay and paid
for by said party of the first part at the market price of
such logs where they lay, and the mark on such logs shall
be changed, and they shall become the property of said
party of the first part."    This instrument was procured at
the instance of the defendant company and taken into pos-
session by it, under the promise made by the company's
agent that the company would sign it and deliver to the
other parties a copy of it.    It was not signed, although
it was retained, and, by what we regard as indisputable
evidence, it was fully ratified by and acted upon by the cor-
poration.    Concerning this matter of ratification it is neces-
sary to speak, since whether this was a valid contract or
not depends largely upon ratification.    The agreement, by
its terms, was not to be completely performed within one
year.    Code, 1881, § 2325.    One J. S. Munday, in all these
matters between the company and the plaintiff and the
other loggers who acted with him, assumed to represent
the defendant; but the case does not present other than
circumstantial evidence, with one exception, to show that
he was actually authorized to make such a contract as the
one under consideration; and much difficulty was made by
the defendant at the trial upon this point, and objections
were interposed at every stage to the introduction of any
testimony tending to show his relations with the defendant.
But, in addition to the transactions with this plaintiff, it
was shown that Munday was really the moving spirit of
the whole enterprise, which culminated in the organization
of the defendant as a corporation.    Just what his nominal
position was does not appear, but in whatever was done by

the defendant, either in the building of its boom works, or in driving the logs in the river, or the purchase of material and supplies, it was always Munday who was at the front and had the actual management and direction of affairs. And, moreover, there is in the case one element of proof which ought to go·far towards foreclosing this corporation from denying that it had fully ratified all of his acts in procuring this contract, whether Munday was its authorized agent or not. In November, 1890, the defendant here sought to obtain from the superior court of Whatcom county a *mandamus* to compel the Nooksack River Boom Company to open its boom and to allow 15,000,000 feet of logs to pass to the Bellingham Bay Boom Company. In that proceeding its officers, under oath, showed to the court that the very logs here in question had been consigned to it, and that it had "entered into a contract with the respective owners of said logs to drive the same from the landings where they were floated down said Nooksack river to the boom of plaintiff, and that, under said contract, plaintiff, by its agents, took possession and control of the said logs and drove them down the said Nooksack river until they reached the boom of the defendant, through which they had been refused passage." It also showed to the court that the defendant had been served by it with a notice that it was the agent for the owners of these logs (among them Tingley being named as one) for the driving of said logs down the said Nooksack river to the boom of the said Bellingham Bay Boom Company, at the mouth thereof. If any more solemn admission could be made by a corporation of its ratification of the acts of an assumed agent than a pleading under oath, in a *mandamus* proceeding in a court of record, we are unaware of what it could be.

But the question remains whether, if the act of the agent in procuring this contract was ratified, it was then binding upon the company, so that it could now be sued upon.

The statute provides that any agreement, contract or promise shall be void where by its terms it is not to be performed within one year from the making thereof, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized.   The question is, what is a signing of such an instrument?   The instrument was in the handwriting of the agent, and the first clause is as follows:

"This agreement, entered into this 20th day of August, 1890, by and between the Bellingham Bay Boom Company, of Fairhaven, Washington, party of the first part, and J. H. Moore and others, respectively, whose names are hereto subscribed, parties of the second part, witnesseth," etc.

It is a well established rule of law that a contract is signed, within the meaning of the statute, whether the name of the party to be charged appears at the bottom, top, middle or side of the paper. *Drury v. Young*, 58 Md. 546; *Clason v. Bailey*, 14 Johns. 487; *Barry v. Coombe*, 1 Pet. 640; 1 Reed, St. Frauds, § 384.

We consider the contract proven, therefore.   But what effect should its existence have upon this case?   Plaintiff brought his action for damages upon two alleged breaches of contract: (1) A failure to drive his logs.   (2) A failure catch and boom them.   And his claim is answered by three propositions, viz.: (1) If fair stages of water have existed in the river since the 19th day of September, 1890, so that his logs could have been driven, and they have not been driven clean, then, under the terms of the driving contract, the logs left behind are to be scaled where they lie, and, upon payment of their value, they become the property of the defendant.   But no such logs can be recovered for in this action, either under the pleadings or the evidence.   (2) If logs driven by the defendant, for want of

ordinary care on its part, failed to reach its boom, and went astray through "sloughs," whence they reached the sea and were lost, for the value of such logs, less charges for driving, the defendant is liable; but if the losses of this class, viz., through "sloughs," were caused by the interference of third parties, accompanied by such threats of violence as would have caused a reasonably prudent person to abandon the possession of the logs to avoid bodily harm to himself or his employés, in case of such logs the defendant would not be liable. (3) For the loss of such logs as floated down the river past the defendant's boom, and were lost because of its failure to catch and hold them, it is liable for the value of the logs, less the driving and boomage charges.

The contracts Tingley made with the Bellingham Mill Company, which respondent claims transferred the ownership of all the logs in question to that company, ought not to prevent a recovery in this case. The contracts show on their face that Tingley was responsible for the delivery of the logs at the mill in Whatcom, and that unless he delivered the logs, he was to get no pay. The mill books also showed that he was credited with nothing but the value of such logs only as actually reached the mill company's possession. *Meeker v. Johnson*, 3 Wash. 247 (28 Pac. Rep. 542); *North Pacific, etc., Mfg. Co. v. Kerron*, ante, p. 214. That portion of the contract of September 3, 1890, which provided for advances upon logs thereafter to be put into the river did not have any of the elements of a sale.

Judgment reversed, and cause remanded for a new trial.

DUNBAR, C. J., and HOYT and ANDERS, JJ., concur.

SCOTT, J., concurs in the result.

### ON MOTION TO RE-TAX COSTS.

DUNBAR, C. J.—The respondent moves to re-tax the costs allowed by the clerk of this court on appellant's cost

bill.   The item objected to in this case is the item of
$198.60 for the transcript.   So far as the amount paid by
appellant to the stenographer for the purpose of preparing
the statement of facts is concerned, this court has already
held that such an item is not a disbursement contemplated
by the statute and cannot be taxed as costs.   See *Brown
v. Winehill*, 4 Wash. 98 (29 Pac. Rep. 927.)

It appears by affidavits accompanying this motion, and
by the counter affidavits of the appellant, that the tran-
script was prepared by appellant, and that in consideration
of that fact the clerk only charged the appellant half price,
or ten cents per folio, for examining and certifying the
same, and that in reality all that was paid by the appellant
to the clerk or to any officer of the court for the transcript
was the sum of $59.25, and this amount we think is all he
is entitled to recover as costs from respondent.   It is
doubtless true that the transcribing of the transcript cost
appellant something; but the allowance of such expenses
as costs, would we think, be liable to lead to abuses, and
to endless controversies, and is not such costs as is con-
templated by statute.   The bill is, therefore, retaxed, and
the item of $198.60 is reduced to $59.25.

Scott, Hoyt, Stiles and Anders, JJ., concur.