[No. 1491. Decided February 14, 1895.]

THE EUREKA SANDSTONE COMPANY, *Appellant,* v. JOHN T. LONG *et al., Respondents.*

BONDS — ACCEPTANCE WITHOUT PRINCIPAL'S SIGNATURE — LIABILITY OF SURETIES — ACTION ON BOND — JOINDER OF PARTIES.

Sureties upon the bond given by a contractor under the terms of § 2415, Gen. Stat., for the protection of those furnishing labor or material to the contractor in the construction of public improvements, cannot escape liability from the fact that the bond was not signed by the contractor, when it has been delivered by him to, and accepted by, the other contracting party with the knowledge and consent of the sureties. (HOYT, C. J., dissents.)

The presumption arises from the delivery of a bond by the principal, as the agent of the sureties, that they must have known its conditions, and ratification by them of the bond while ignorant that it was unsigned by the principal, will not affect their liability.

A complaint against principal and sureties upon a contractor's bond, given in compliance with § 2415, Gen. Stat., but which had not been signed by the principal, is not demurrable on the ground of misjoinder of parties defendant, for the reason that the obligations of the parties and the rights of plaintiff are identical, although founded in the case of the principal upon the contract, and in the case of the sureties upon the bond.

*Appeal from Superior Court, Pierce County.*

*Arthur N. Jordan,* for appellant.

*Crowley, Sullivan & Grosscup,* and *Parsons, Corell & Parsons,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—Respondent Long built a court house for Pierce county; which building was accepted June 21, 1893. The county took from Long and his co-defendants a bond under § 2415 of the General Statutes. The bond was not signed by Long, but was signed by all the other defendants, and was delivered to the county by Long and by the county accepted. Appellant, the Eureka Sandstone Company, furnished Long something over $16,000 worth of material, which was used in the construction of this courthouse, and only a part of which has been paid for, and brought this action against Long and his sureties to recover the balance due. Defendants demurred, and the demurrers were sustained. Plaintiff stood upon its complaint, and judgment for defendants was entered on the demurrers. This appeal is taken from the orders sustaining the demurrers, and from the judgment entered.

The main fact upon which the demurrers were based and upon which the court decided the case below, and which is argued here by both respondents and appellant, is that the name of the defendant John T. Long, the contractor, was not signed to the bond. From this fact it was contended that the complaint did not state a cause of action, and that there was a misjoinder of causes and a defect of parties defendant.

After a somewhat extended investigation of the authorities governing the principles involved in this case, we are of the opinion that the court committed error in sustaining the demurrers to this complaint. After stating all the facts, the complaint alleges that said bond was delivered to the county commisioners of said county with the knowledge and consent of the sureties. It also alleges that Long procured and caused it to be executed, and at the time of the execution of the bond provided for by the statute, it was delivered by the defendants herein to said board of county commissioners as part and parcel of said contract. It is also alleged in the complaint that the bond was duly filed by the board of county commissioners on the 19th day of September, 1890, and that on the 7th day of January, 1892, before the sale and delivery of the stone mentioned in the complaint, for the payment of which this action is brought, the defendants and each of them, together with the county commissioners of Pierce county, for the purpose of modifying and changing the terms and conditions of the original contract and said bond, entered into and delivered to the said county commissioners a certain other contract in writing, a copy of which is attached to and made a part of the complaint; and that thereafter, with the knowledge and consent of the commissioners and these sureties, Long proceeded to complete and carry out his contract

with the said county as modified by this second contract.

There is a direct conflict of authority on this question, as indeed there is on almost every question concerning the liability of sureties on a bond. The older cases, it seems, have held closely to the rule that bonds are to be construed strictly in favor of the sureties; while this rule has been modified by later decisions. This modification, it seems to us, is in accordance with common sense and the spirit of the age. A bond is nothing more nor less than a contract, and the sureties to a bond are simply parties to a contract; and we know of no reason why the same rules of construction should not be applied to a bond as to any other contract. It is true that the sureties may not be beneficiaries in any respect, and that it may be purely a matter of accommodation with them; but the bond was made to effect a certain purpose; that purpose was to secure the obligees from loss in case of its violation; and there is no reason why the law should make it more difficult for the obligee to obtain redress in case of a violation of a bond than a party to any other contract.

The true inquiry should be, what was the meaning and intent of the contract; and when that meaning and intent can be ascertained, the contract ought to be enforced. While, as insisted by respondents, courts should not presume to make contracts for individuals, neither should they allow them to escape responsibilities which they have voluntarily assumed, by too strained a construction of technical law.

The allegation in this complaint is a broad one, viz., that this bond was delivered with the knowledge and consent of the sureties. If this be true, and for the purposes of this case it must be taken to be true,

then the sureties waived any formal or other objection that there might be to this bond; for, under the plain terms of the allegation, they must have had knowledge of the bond as it was delivered, and consented to its delivery in that condition.

It seems to us that the principle embodied in this case was decided by this court in the case of *Ihrig v. Scott*, 5 Wash. 584 (32 Pac. 466), where it was held that where a bond, executed by a contractor for the erection of a school house, by mistake named the board of school directors instead of the State of Washington as obligee, such defect was not fatal, if from the terms of the bond it appeared that its object was to secure laborers and material men as provided for by the law making provision for such bond. In that case this court said:

"The simple fact, then, of the want of the proper obligee in this bond is not fatal to it, if from its terms the object for which it is executed appears. Even a superficial examination will show such to be the fact. No one can read the bond in the light of the statute above referred to without at once coming to the conclusion that in executing it by the principal and sureties and the acceptance thereof by the proper officers of the school district, there was an intention on the part of all to provide the security required by said statute, in the interests of such as might thereafter by virtue thereof become entitled to protection. This would be the rule without the aid of any curative statute. For while it is true that under the old rules existing at common law much technical accuracy was required in regard to instruments of this nature, yet even in the absence of any statute, such rule has been by the decisions of the courts very much modified, and at this time courts look more to the substance than to the form in determining as to whether or not such instruments shall have force."

And the court then proceeds to cite our statute (Code Proc., § 800) which provides that —

"No bond required by law, and intended as such bond, shall be void 'for want of form or substance, recital, or condition; nor shall the principal or surety on such account be discharged, but all the parties thereto shall be held and bound to the full extent contemplated by the law requiring the same, to the amount specified in such bond."

Certainly the reasoning of the court in this case is applicable to the one at bar. In the case discussed there was no obligee mentioned, for the naming of the board of school directors, who could not under the law be obligees to the bond, amounted to no mention at all. In the case at bar there is no signing by one of the obligors. Certainly there can be no more reason why a bond should be declared void and illegal by reason of its non-execution by the obligor than by reason of its omission of the name of the obligee; and as with the case discussed, it takes but a superficial examination of the case at bar to lead one to the conclusion that in the execution of the bond in question by the sureties, and the acceptance thereof by the county commissioners, there was an intention on the part of all to provide the security required by the statute in the interests of such as might thereafter, by virtue thereof, become entitled to protection. The appellant in this case, relying upon this bond, furnished this material to the contractor under the rule laid down in *Ihrig v. Scott, supra,* and certainly ought to be protected.

*State of Ohio v. Bowman,* 10 Ohio, 445, is a well reasoned case, and, in spite of the ingenious attempt by counsel for respondent to distinguish it from the case at bar, we think is exactly in point. The court in

that case, in a very learned opinion, after the citation by counsel of many of the cases which are cited by respondents in support of their contention here, squarely decided that where in a county treasurer's bond the name of the treasurer is recited in the body of it, but where he neither signs nor seals it, his sureties who do execute it are liable. The statute in that case provided that the county treasurer, previous to his entering upon the office, should give bond, with four or more freehold sureties, etc.; and it also provided that in case of default, suit should be instituted against the treasurer and his sureties.

"From which," says the court, "it is argued that the statute contemplates an execution by the principal as well as his sureties. I admit that it is the duty of the treasurer to execute the bond, and that the statute even supposes that he will do so. But I deny the proposition, that if it is not done the bond will be therefore void. The bond may be procured; may, in the words of the act, be given by the principal, although he did not sign or seal it. . . . The completeness of the bond, *stricti juris*, depends simply upon the fact whether it was given by him. And that it was thus given the indorsement on the back of the bond, on the very day on which the term of office commenced, on the very day when the bond should be given, of the oath of office by the principal, affords, in the absence of any countervailing testimony, the strongest possible presumption."

The fact that the bond was given by the contractor in this case plainly appears from the allegations of the complaint; and if the completeness of the bond, *stricti juris*, depends upon that fact, the demurrers were certainly wrongfully sustained. Again, the court, in answer to the argument used in the case above mentioned, viz., that the sureties would be deprived of their

rights against the principal if judgment should be obtained on this bond, says:

"Great reliance is placed upon the fact, that if the instrument is not executed by the principal it will affect the remedy over against him by the securities. There would be great force in this argument if the remedy were destroyed; but it is not; the force and the extent of this liability to them are unimpaired. Whether they could use the bond, *per se,* as evidence of his liability, presents a question merely of convenience in the use of the right, but does not affect the right itself any more than would the loss or destruction of the bond."

And so with the case at bar. Unquestionably the sureties would have a right of action against the contractor for any damages which they sustained by reason of the violation of his contract. The court in the case above cited quoted from the case of *United States v. Linn,* 15 Pet. 290, where it was held that the instrument on which the suit was brought was a writing not sealed by either the principal or his sureties, and that although it was not a bond it was a good contract between the parties.

Another case which is exactly parallel with the case at bar is *Cockrill v. Davie,* 14 Mont. 131 (35 Pac. 958). There it was held that where the liability of the principal in a bond is fixed by contract, or by operation of law, his failure to sign the bond does not affect the liability of his sureties thereon. This case involved the liability of a contractor who gave bonds for the faithful performance of his contract. There the court, among other things, said:

"Appellant insists that the bond in question is wholly void because Davie, named therein as principal, did not sign it along with the sureties. But, after much consideration of this subject and the authorities,

we cannot sustain that view. The same obligation was fixed upon Davie by another contract, and Renner and Cornelius [who were the sureties] undertook and promised, in writing, to answer for the default of Davie in respect to his engagements by virtue of that contract, which the sureties described in their bond. This bond was a collateral engraftment on the contract, whereby those sureties took upon themselves the burden of answering for · any default which Davie might make in respect to his obligation thereunder. As to such obligations, where the liability of the principal is fixed by contract or by operation of law, the sureties who guarantee the fulfillment of that obligation cannot avoid their obligation because the principal did not sign the bond with them."

In this case the same obligation was imposed upon Long by his direct contract with the county commissioners, and the sureties in this case undertook and promised to answer for the faithful performance on his part of that contract; and the obligation and liabilities of the principal, Long, were fixed by the contract which he had before made with the county commissioners. It would require more genius than the writer of this opinion possesses to distinguish this case, either in fact or principle, from the case at bar.

As somewhat bearing on this proposition, it was decided by this court in *Tingley v. Bellingham Bay Boom Co.*, 5 Wash. 644 ( 32 Pac. 737), that a contract is signed within the meaning of the statute of frauds, when the name of the party to be charged is written by him or an authorized agent anywhere in the contract. " It is a well established rule of law," says the court, " that a contract is signed, within the meaning of the statute, whether the name of the party to be charged appears at the bottom, top, middle· or side of the paper;" citing authorities. A review of the whole opinion in this case will show that the principle

involved there is applicable here, and that the instrument was held good because it was ratified by the parties who signed it and by the parties who received it. It is true that the court proceeded to state that under the statute the party who raised objection to the validity of the contract would have been held responsible anyway for a portion of the damages, but a portion, it will be seen, depended strictly upon the contract. And in the case at bar, this bond was not only ratified by the commissioners, but it was ratified and acknowledged, and its force and efficacy and purpose especially acknowledged two years afterwards when the sureties agreed to a change of the contract upon which the bond was based.

Nor do we think with the respondents that it should necessarily appear from the complaint that the sureties were aware that the principal had not signed the bond at the time of its ratification. Having given a bond to comply with the provisions of the statute, and that bond having been delivered by their agent, they must be presumed to have known its conditions.

It is conceded by the appellant that, if this bond had anything on its face to challenge the attention of the obligees, it would fall within the rule announced by this court in *King County v. Ferry*, 5 Wash. 536 (32 Pac. 538; 34 Am. St. Rep. 880); but it is asserted that under the rule announced there the scope of the agency only went to the extent of the delivery of the bond as agreed upon between the sureties and the principal. In that case, in laying down the rule as to the liability of the sureties, which was a discussion really with reference to instruments which had been changed after their execution, this court said:

" Of course, if there is anything on the face of the bond when it is delivered to excite the suspicion of the

obligee that the bond has been tampered with, or suffi-
cient to put a prudent person on his guard, he ought
to be held bound to make an investigation before ac-
cepting the bond.   But to hold the obligee responsible
where the bond is good on its face, and where he has
no notice until after the defalcation has occurred, is,
in our judgment, not only wrong in principle, but is
also opposed to the great weight of authority."

It seems to us that the bond in this case does not fall
within the rule laid down by the court in that case, or
of any of the cases cited by the court therein.   Here
there have been no erasures or alterations of this bond
which on its face would tend to put the obligees on
their guard.   It is true that the name of the principal
appears in the body of the bond and does not appear
among the signatures; but that is altogether a different
kind of a case from where one signature had been
erased and another inserted in such a way that it was
easily discernible, or when a blue mark had been drawn
across the name of a signer, and instances of that kind,
which would by casual observation attract the atten-
tion of the obligees.   We think, even considering the
case from a standpoint of agency alone, that the sure-
ties would have no defense to this bond.

We are aware that on the main proposition, viz., the
validity of the bond where the principal has not signed,
there is conflict of authority, and we think it would be
unprofitable to go into a review or a discussion of the
cases holding such bonds illegal.   But the cases we
have cited appeal to our judgment as being consistent
and based upon fairness and right reasoning, and
therefore we are inclined to follow them.

We do not think there is any merit in the conten-
tion of the respondents, that there is a misjoinder of
parties to this action.   As was said by the Montana
court in *Cockrill v. Davie, supra,* the bond here was a

collateral engraftment upon the contract which respondent Long had already given; and while the evidence which would tend to sustain this case against Long would differ from that which would sustain it against the sureties, it being in one case the contract and in the other the bond, the obligations of the parties and the rights of the plaintiff are identical. Under the bond and the contract it is the primary duty of the defendants to pay for this material. The bond and the contract are provided by statute for the express purpose of securing persons who furnish material or labor; and the right of the plaintiff in this case is the same as to all the defendants, and the testimony can be as logically and consistently brought out in one case as in two.

It will be necessary, of course, for the plaintiff, appellant here, to establish the fact that he furnished the goods to Long, the contractor, and under what terms or conditions or contract they were furnished. After this is done, all that is necessary to effect the sureties' liability is to prove that they signed the bond which the law provides for the enforcement or security of the contract entered into by the contractor.

The judgment will therefore be reversed, with instructions to the lower court to overrule the demurrers to the complaint.

SCOTT, ANDERS and GORDON, JJ., concur.

HOYT, C. J. (*dissenting*).—I am unable to agree with all that is said in the foregoing opinion. I fully indorse what is said therein as to the duty of courts to conform their rulings to the condition of things existing at the time the decisions are made, even although such rulings conflict in some degree with the weight of authority upon the subject. I also fully concur in

what is said about the duty of courts to look at sub-
stance rather than form in the construction of con-
tracts of all kinds, including those of sureties in bonds
and other written instruments.  But I cannot agree
with what is said as to the force to be given the allega-
tions in the complaint to the effect that the bond in
question was delivered to the officers of the county by
the defendants.  All that could reasonably be inferred
therefrom is that the instrument came into the posses-
sion of the county, and that defendants had knowledge
of that fact.  It should not be inferred from such alle-
gations that there was any consent on the part of the
sureties that the bond should be delivered before it
had been made complete by the signature of the per-
son named therein as principal.

If only such inference can be drawn from the allega-
tions in the complaint, no question of estoppel as
against the sureties or waiver by them of the right to
have the bond signed by the principal, can be invoked
to aid in determining the rights of the parties.  It fol-
lows that the rights of the sureties must be adjudicated
in the light of the presumption that they signed the
instrument with the understanding that it should be
signed by the principal before it should be of force
against them; and also of the further fact that there
was no privity between the sureties and the plaintiff
in the action.  At the time the sureties signed the in-
strument, the plaintiff was an entire stranger to the
transaction, and for that reason no contract relation
was created with it by such signing.  It follows that
the rights of the plaintiff were dependent entirely upon
the statute; and it can maintain no action upon the
instrument unless it is such as the statute required.

Did the instrument in question so conform to the
requirements of the statute that it should be held to be

the bond thereby required ? Such statute provides that the contractor should execute the bond with two or more sureties, and it would seem plain that a bond executed by sureties alone would not come within its terms. But even if a bond executed by another than the contractor as principal with sureties would be in compliance with the statute, it does not follow that an instrument without any principal at all would come within its provisions. The distinctions between bonds and other forms of contracts are so well established that it is not proper for courts to disregard them until authorized so to do by proper legislation. The statute requires that a bond should be given. It follows that an instrument which does not possess the substantial features of a bond does not come within its provisions. One of such essential features is a principal. There can be no bond without a principal to be bound thereby. The instrument under consideration was executed by sureties alone; hence it lacked one of the essential qualities of a bond. It follows that even though the sureties be held to have waived the want of the signature of the principal, the instrument was so lacking in the essentials of a bond that the statute could not be invoked to aid in the assertion of rights thereunder.

But in my opinion no such waiver was shown. There could be no waiver or estoppel by the sureties which could have force in favor of the plaintiff unless the acts or omissions upon which such waiver or estoppel was founded occurred after the plaintiff had furnished the material, and by so doing put itself in privity with the parties to the bond, if one had been given.

In my opinion, the demurrer was also rightfully sustained, because of the misjoinder of causes of action.

Long, one of the defendants, was not liable upon the
bond. If he was liable to the plaintiff at all, it was
upon a contract entered into between it and himself,
to which the other defendants were strangers. The
right of action as against him could only have been
upon the contract under which the materials were fur-
nished, and it is clear that the other defendants were
strangers to that contract. The claim of appellant in
this regard is, that by the execution of the instrument
in question the sureties became parties to the contract
for the erection of the building. I am unable to see
any reason for sustaining this claim. If the county
itself was attempting to enforce rights against Long,
there might be some reason for holding that a bond
given by him and sureties for the performance of the
contract would establish a privity as between the sure-
ties and the county in relation thereto. But in my
opinion the claim could not be sustained even in an
action of that kind; much less can it be when the
action is sought to be maintained by strangers to such
contract. The contract between the county and the
one who was to erect the building was distinct and
complete before the execution of the instrument in
question. With such contract the plaintiff had no
connection. The instrument in question was given to
the county for the purposes contemplated by the
statute, and if an action could be maintained thereon
at all, it could only be against those who were parties
to it. If the sureties were liable at all they were liable
upon the instrument which they signed. The defend-
ant Long not having signed such instrument, could not
be made liable thereon. If liable to plaintiff at all,
his liability arose out of an entirely different contract.
Hence the contention of the defendants that two causes

of action had been improperly joined was warranted by the facts.

In my opinion the judgment should be affirmed.