[No. 11851.  Department Two.  November 14, 1914.]

I. H. JENNINGS, *as Trustee in Bankruptcy, etc., Appellant,*
v. FRANK SCHWARTZ, *Sole trader as Alaska Junk
Company, Respondent.*[1]

SALES—CONDITIONAL SALES — RECORDING — "SIGNED BY VENDOR"—
STATUTES—CONSTRUCTION.  A conditional sales contract, containing
the vendor's name only in the opening clause as the vendor, signed
at the foot by the vendee alone, although accepted by, acted upon, and
filed by the vendor, is not "signed" by the vendor, within the mean-
ing of Rem. & Bal. Code, § 3670, providing that certain conditional
sales of personalty shall be absolute as to subsequent creditors, etc.,
unless, within ten days after taking possession by the vendee, a
memorandum of the sale "signed by the vendor and vendee" be filed
in the auditor's office; since, considered as a recording act, the pri-
mary purpose of which is to prevent frauds of the vendor and vendee
upon third persons, it is to be more strictly construed than the stat-
ute of frauds, to the end that the instrument filed shall show on its
face a compliance with the statute, and be complete in itself with-
out reference to extrinsic matters affecting the rights of the parties
to it.

Appeal from a judgment of the superior court for King
county, Humphries, J., entered November 20, 1913, upon
findings in favor of the defendant, in an action for conversion,
tried to the court.  Reversed.

*Nelson R. Anderson* and *France & Helsell,* for appellant.

*Wright, Kelleher & Caldwell,* for respondent.

FULLERTON, J.—On August 23, 1912 , the respondent
Schwartz, trading under the name of Alaska Junk Company,
made a conditional sale of personal property, consisting of
a steam boiler with fittings, to the Pacific Coast Glass Com-
pany.  The property was delivered on the following day, and
within ten days from that time, the vendor of the property
caused to be filed in the auditor's office of the county wherein
the vendee resided a memorandum of the conditions of such

[1]Reported in 144 Pac. 39.

sale. The opening and closing clauses of the memorandum read as follows:

"These presents witness:

"That The Alaska Junk Company, of Seattle, King County, Washington, hereinafter called the vendor, has delivered to Pacific Coast Glass Co., residing at Seattle, in King county, Washington, hereinafter called the vendees, the personal property hereinafter described, under a contract of conditional sale, The terms and conditions of which contract of Conditional Sale are as follows, to wit:    .    .    .

"In Witness Whereof, the parties hereto have caused these presents to be executed this 23rd day of August, 1912."

The instrument was signed by the vendee at the close thereof at the ordinary place of signature. It was not signed by the vendor personally, either with his proper or trade name, on any part of the instrument. The only place his name appears is in the opening clause, where it was printed as a part of the printed form which the draughtsman used who prepared the instrument.

After receiving the boiler, the vendee set it up in its manufacturing plant, wherein it was used from about August 1, 1912, until the middle of November following, at which time the plant was permanently closed. The vendees defaulted in the last installment payment due on the purchase price of the property, and the vendor, in the early part of February, 1913, after notice, entered the plant and retook possession of the boiler.

On February 11, 1913, the vendee was adjudged a bankrupt, and in due course of the bankruptcy proceedings, the appellant, Jennings, was elected trustee of the bankrupt's estate. The proceedings in bankruptcy disclosed creditors of the bankrupt who had become such subsequent to the delivery of the boiler to the vendee and prior to the time possession thereof was retaken by the vendor, and who had no notice of the terms of the sale other than such constructive notice as was imparted by the filing with the county auditor of the conditional contract of sale. The trustee in bankruptcy con-

ceived that the memorandum of the sale as filed was insufficient to impart notice to such creditors, and instituted the present action to recover the value of the boiler. Recovery was denied him in the trial court, and he appeals from the adverse judgment entered.

The principal question suggested by the record is the validity, as against the subsequent creditors of the bankrupt, of the contract of conditional sale. The statute regulating conditional sales of personal property is found at § 3670 of Rem. & Bal. Code (P. C. 349 § 35), and reads as follows:

"All conditional sales of personal property, or leases thereof, containing a conditional right to purchase, where the property is placed in the possession of the vendee, shall be absolute as to the purchasers, encumbrancers and subsequent creditors in good faith, unless within ten days after taking possession by the vendee, a memorandum of such sale, stating its terms and conditions and signed by the vendor and vendee; shall be filed in the auditor's office of the county, wherein, at the date of the vendee's taking possession of the property, the vendee resides."

It is the contention of the appellant that the recorded memorandum of the conditional sale contract was not signed by the vendor, within the meaning of this provision of the code, and is therefore void as against the creditors of the bankrupt who became such subsequent to the delivery of the property to the vendee.

From a mere reading of the section of the statute quoted, it will be observed that there is no question as to the necessity of a signing by both the vendor and vendee of the memorandum made of a conditional sale of personal property in order to render the contract valid against subsequent creditors in good faith of the vendee, as the statute so declares in plain and unequivocal terms, leaving no room for doubt or conjecture. It will be observed, also, that this memorandum was not so signed, unless it can be held that the printed trade name of the vendor in the opening clause of the instrument is the signature of the vendor.

To the question, what will constitute a signing of a memorandum within the meaning of this statute, the respondent cites and relies on the cases passing upon the somewhat analogous question, what will constitute a signing of a memorandum by the party to be charged under the statute of frauds. The cases upon the point from other jurisdictions, while not entirely harmonious, seem to announce the rule that to print, stamp or typewrite the signature of the party to be charged on the instrument, whether at the top, in the body, on the side, or at the bottom, is a sufficient signing, if the instrument be delivered, acted upon, or disposed of by such person in such manner as to unequivocally show that he intended to adopt and recognize the signature as his own. *Drury v. Young*, 58 Md. 546, 42 Am. Rep. 343; *Coddington v. Goddard*, 16 Gray 436; *Deep River Nat. Bank's Appeal*, 73 Conn. 341, 47 Atl. 675; *Weston v. Myers*, 33 Ill. 424; *Streff v. Colteaux*, 64 Ill. App. 179; *Chapman v. Inhabitants of Limerick*, 56 Me. 390; *Dreutzer v. Smith*, 56 Wis. 292, 14 N. W. 465; *Hamilton v. State*, 103 Ind. 96, 2 N. E. 299, 53 Am. Rep. 491; *Delaware Ins. Co. v. Pennsylvania Fire Ins. Co.*, 126 Ga. 380, 55 S. E. 330. Our own cases seem to have adopted this broader rule. *Tingley v. Bellingham Bay Boom Co.*, 5 Wash. 644, 32 Pac. 737, 33 Pac. 1055; *Eureka Sandstone Co. v. Long*, 11 Wash. 161, 39 Pac. 446; *Anderson v. Wallace Lumber & Mfg. Co.*, 30 Wash. 147, 70 Pac. 247; *Degginger v. Martin*, 48 Wash. 1, 92 Pac. 674.

In the first of the cases cited from this court, the memorandum in question was an agreement by which the party sought to be charged had undertaken to perform certain named services in driving logs. The memorandum was in the handwriting of the agent of the principal, and was not signed at the usual place of signature, nor did the promisor's name appear thereon other than in the opening clause of the agreement, which read as follows:

"This agreement, entered into this 20th day of August, 1890, by and between the Bellingham Bay Boom Company,

of Fairhaven, Washington, party of the first part, and J. H. Moore and others, respectively, whose names are hereto subscribed, parties of the second part, witnesseth," etc.

This was held a sufficient signing to take the case out of the statute which provided that a contract or promise which was not to be performed within one year from the making thereof was void unless such contract or promise, or some note or memorandum thereof, be in writing and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized. After mentioning certain acts thought to show a ratification of the agreement by the promisor, the court said:

"It is a well established rule of law that a contract is signed, within the meaning of the statute, whether the name of the party to be charged appears at the bottom, top, middle or side of the paper. *Drury v. Young*, 58 Md. 546; *Clason v. Bailey*, 14 Johns. 487; *Barry v. Coombe*, 1 Pet. 640; 1 Reed, St. Frauds, § 384."

The case of *Eureka Sandstone Co. v. Long* quotes from and cites the foregoing case with approval. *Anderson v. Wallace Lumber & Mfg. Co.* is similar in its facts to the case of *Tingley v. Bellingham Bay Boom Co.* There the vendor in an agreement to sell real property brought an action against the vendee to compel a specific performance of the contract. The vendee defended on the ground that the contract was within the statute of frauds, because not signed by it. The only place its name appeared in the instrument was in the body thereof, where, according to the purport of the agreement, it would usually and customarily be written. Discussing the question the court said:

"It is objected that the defendant here is the party to be charged, and that the contract was not signed by defendant, or any one on its behalf. Assuming, for the present, that authority to sign was vested in the secretary, the signature seems to fall directly within the rule stated in *Tingley v. Bellingham Bay Boom Co.*, 5 Wash. 644 (32 Pac. 737). There the memorandum was not signed by the defendant corpora-

tion, but the instrument was in the handwriting of the agent.

. . .

"But it is contended that it must be shown that the name of the defendant appears in some appropriate way to have been put in intentionally, to authenticate the memorandum. Conceding this, it is shown here that the agent wrote the memorandum, and wrote the name of defendant, as vendee in addition to, and below, the printed name of defendant; and these facts are aided by the letter to President Black, signed by the agent. There can be no reasonable doubt that the vendor was bound by the memorandum, which purported to be a mutual agreement. The suggestion that it is in effect an option given by plaintiffs to defendant is not substantial. It purports to be an express agreement to convey the timber land, was so accepted by the defendant, and was so construed by the parties thereto; and a deed was thereafter drafted in pursuance thereof, by direction of defendant's officers, and executed by plaintiff; but defendant refused to receive the same."

In *Degginger v. Martin*, it was held that a contract of a broker to sell the land of his principal was sufficiently signed by the broker, where the name under which he did business was typewritten at the usual place of signature followed by his written initials. Conceding the statute to be analogous, these cases, it must be confessed, support the judgment of the trial court.

But with reference to the statute in question, the court, in so far as it has heretofore had occasion to consider it, has shown an inclination to give it a more strict construction, or perhaps, better, a construction more in accordance with the literal import of its terms.

In the case of *American Multigraph Sales Co. v. Jones*, 58 Wash. 619, 109 Pac. 108, we held such a contract absolute, as to subsequent creditors of the vendee, because the memorandum was not filed with the auditor within ten days after the delivery of the property, notwithstanding it was filed prior to the time the subsequent creditors became such; citing and quoting from with approval the case of *Chilberg*

*v. Smith*, 174 Fed. 805, where the circuit court of appeals, in a case arising under the particular statute, announced the same rule. To the same effect is the case of *Worley v. Metropolitan Motor Car Co.*, 72 Wash. 243, 130 Pac. 107, where it was held that the memorandum of the sale must be executed within ten days after the property is taken over, as it could not be antedated and made to answer the purpose of a chattel mortgage. In this case it was said:

"Whatever the general rule may be as to priority between creditors, we think this case must be decided by reference to the statute and that alone. The provision that all conditional sales of personal property where the property is placed in the possession of the vendee shall be absolute is equivalent to the expression 'shall be void,' that is, of no legal force or effect as to purchasers, encumbrancers and subsequent creditors in good faith, unless the requirements of the statute are followed."

In the case of *First Nat. Bank of Everett v. Wilcox*, 72 Wash. 473, 130 Pac. 756, 131 Pac. 203, it was held that a conditional sale contract was absolute as to subsequent creditors, where the memorandum of the contract was not filed in the county of the residence of the vendee as such residence was stated in the articles of incorporation, although filed in the county where the property was delivered and where the vendee had its mills and manufacturing plant.

When the purposes of the different statutes are considered, there would seem to be a valid reason for construing the one more literally than the other. The statute of frauds, as its name indicates, was intended to prevent fraud through the instrumentality of mistake and perjury. It was intended to prevent one party to a contract from suffering loss through the parol testimony of a perjured or mistaken witness, who testifies to a bargain different from the one actually made. Since, therefore, the purpose of the statute is accomplished by the production of a writing which clearly evidences the bargain, the courts, in order that the one party may have the benefit of the bargain, have refused to allow the other

party to escape by the plea of want of signature to the writing, where his name appears at some place thereon, and his conduct shows that he intended to bind himself according to the terms of the writing. But it must be conceded, we think, that some of these cases go to great lengths, and all of them clearly beyond the literal meaning of the statute. Perhaps their real justification is found in the fact that the courts thereby prevent the writing from operating upon the one party a fraud as great as the statute intended to prevent the want of a writing operating upon the other. Again, the statute directly affects the parties to the contract only; the public interest in the statute lies in the fact that its tendency is towards the promotion of good morals.

The statute in question has a wider effect. It has the elements of a recording act. It will be remembered that, prior to its enactment, unrecorded conditional bills of sale of personal property were valid in this state, not only as between the vendor and vendee, but as to encumbrancers and purchasers without notice, and subsequent *bona fide* creditors of the vendee. It was thus possible for the vendee of such property to commit frauds by disposing of the property to innocent third persons and by using it as a basis upon which to obtain credit. While the statute therefore tends in the same degree to prevent frauds between vendors and vendees through the instrumentality of perjury as does the statute of frauds, its principal if not primary purpose is to prevent the vendor and vendee of such property from committing frauds upon third persons. It would seem then, since it affects persons other than the parties to the agreement, the courts are justified in giving it a more strict construction than it gives to the statute of frauds; that it is proper to require that the instrument when filed shall show on its face a compliance with the statute; that the instrument shall be complete in itself; thus doing away with the necessity of inquiring into extrinsic matters to determine its validity.

Tested by the more strict rule, we are clear that this memorandum was not signed by the vendor within the meaning of the statute. The instrument would appear no different on its face had it been prepared wholly by the vendee without the knowledge or consent of the vendor. Whether it was signed by the vendor or not was thus subject to dispute, even as between the parties, and the question could only be determined by an examination into their acts and conduct. The rights of third persons should not be left to depend upon such circumstances; as to them, the instrument should be fair upon its face. As this instrument is not thus fair, we hold the sale absolute as to subsequent creditors in good faith.

The trial court found the value of the boiler at the time it was retaken by the respondent to be $200. The appellant questions the correctness of this finding, contending that the evidence shows that it was of considerably greater value. The evidence as to its value is conflicting, but our examination of it does not convince us that it supports the appellant's claim, or preponderates against the finding of the trial court.

The judgment appealed from is reversed, and the cause remanded with instructions to allow a recovery in favor of the appellant, plaintiff below, in the sum of two hundred dollars.

CROW, C. J., PARKER, and MOUNT, JJ., concur.