Dreutzer vs. Smith.

DREUTZER vs. SMITH.

*November 23 — December 12, 1882.*

COUNTIES: TAX CERTIFICATES: TAX DEED. *(1) Presumption as to county seal. (2) Assignment of certificates by indorsement with stamp. (5) Tax deed to purchaser of certificate from town, void. (6) Affidavit of non-occupancy construed.*
LIMITATION OF ACTIONS: *(3) Object of statutes. (4) Sec. 7, ch. 334, L. 1878, construed.*

1. If the clerk of a county, in executing a tax deed, affix a seal formerly used by the *board of supervisors* of such county, it will be presumed to be the only seal the county has, until proof be made that the county board has procured another *county seal*, as authorized by sec. 669, R. S.

2. Under a statute (sec. 1140, R. S.) which provides that the county clerk or treasurer may assign tax certificates "*by writing his name* in blank on the back thereof, . . . with his official character added," such certificates may be assigned by the officer *stamping* his name and official character upon them, with intent to assign.

3. Statutes of limitation are intended to cure defects which could be taken advantage of by action brought within the time limited, and not to cure defects which did not then exist and which the limitation could not cure.

4. So, sec. 7, ch. 334, Laws of 1878, was not intended to cure defects and irregularities in tax proceedings, which might occur after the time limited for bringing the action. That section contains two limitations: one, of nine months after the date of the sale or certificate, within which the owner of lands sold for taxes may avoid the sale and certificate by showing irregularities in the proceedings prior thereto; and a second, of nine months after the deed, within

Dreutzer vs. Smith.

which the owner may attack the validity of the deed for any irregularities occurring after the certificate is issued.

5. The assignment of a tax certificate to a town being void, a purchaser of such certificate from the town obtains no title thereto, and a tax deed issued thereon to such purchaser is void as against the original owner of the land.

6. An affidavit of non-occupancy, made March 9, and filed with the county clerk March 10, for the purpose of obtaining a tax deed, stating that "the lots and pieces or parcels of land enumerated and described below are not now, and have not been, within the last six months, in the possession or occupancy of any person for the period of thirty days," is *held* to show with sufficient certainty that no one of the parcels described had been occupied for the period of thirty days within the six months immediately preceding March 10. See sec. 1175, R. S.

APPEAL from the Circuit Court for *Door* County.

The case is stated in the opinion. The affidavit of non-occupancy therein referred to was as follows, excepting the description of the land, signature and jurat:

"State of Wisconsin, County of Door — ss:

"*Joseph Smith*, of the town of Jacksonport, being first duly sworn, deposes and says that the lots and pieces or parcels of land enumerated and described below are not now, and have not been within the last six months, in the possession or occupancy of any person for the period of thirty days, and that he makes this affidavit for the purpose of obtaining tax deed on said described lots and lands on certificates of sale for taxes in his possession, according to the provisions of law in such cases made and provided."

The court directed the jury to find for the defendant, and from a judgment upon the verdict, entered July 21, 1881, the plaintiff appealed.

For the appellant there were separate briefs by *O. E. Dreutzer*, as attorney, and *Tracy & Bailey*, of counsel, and oral argument by *Mr. Dreutzer* and *Mr. Tracy*.

For the respondent there were separate briefs by *Timlin & Manseau*, as attorneys, and *Hastings & Greene*, of counsel, and oral argument by *Mr. Timlin*.

TAYLOR, J.   This is an action of ejectment.   The plaintiff showed title to the lands described in the complaint, derived from the United States.   The defendant set up a tax deed, executed by the county clerk of Door county, bearing date March 10, 1881, to the defendant as grantee, purporting to convey the same lands to the defendant.   The deed was based upon a tax sale made May 9, 1876.   The deed recites that the defendant was the assignee of Door county.   The attestation clause of the deed recites as follows: "And have hereunto affixed the seal of said county board of supervisors of Door county at Sturgeon Bay," etc.   The defendant, in his answer, set up the tax deed as a defense, and pleads also the statute of limitations in bar of any objection to the validity of the tax deed, on account of any matters occurring in the tax proceedings previous to and including the issue of the tax certificate on which the deed was founded.   The plaintiff objected to the tax deed because it showed upon its face that it was not properly sealed with the seal of the county.   This objection was overruled.   The plaintiff then offered to show that the tax certificates upon which the deed was issued had been assigned by the county to the town of Sevastopol, and delivered to the agent of that town, and he offered the tax certificates themselves for the purpose of showing they never were assigned to any one.   The certificates were produced, and they were in the usual form.   There was an indorsement on the back of each as follows:

"Dec. 31st, 1877.   Assigned.   A. D. THORP, County Clerk of Door County."

This was the only assignment on any of the certificates, and it was admitted that this assignment was placed on them by a stamp, no part of the indorsement being in the handwriting of Thorp, the county clerk, except the date; that Thorp affixed the stamp himself, and he was the party who issued the deed, and was county clerk of Door county at the time the assignments were made and at the time the certifi-

cates were transferred. It is said by the learned counsel for the respondent that the stamp was a fac-simile of the clerk's handwriting. After the certificates with the stamped assignments thereon were exhibited and the foregoing admissions made, the court excluded all the evidence in regard to the certificates and the assignment thereof, and the plaintiff's counsel excepted. The rulings of the court upon the objection to the validity of the deed and the rejection of the evidence offered by the plaintiff are assigned as error.

The objection that the deed was void because not properly sealed, was, we think, properly overruled. Previous to the revision of 1878 the only seal of the county was the seal of the county board of supervisors, and this seal was used to authenticate all the acts of the county where the seal of the county was required for such authentication. Sec. 34, ch. 13, R. S. 1858; 1 Tay. Stats., 301, § 42. This seal was also used in the execution of tax deeds. Sec. 51, ch. 22, Laws of 1859; 1 Tay. Stats., 439, § 167. Subd. 8, sec. 669, R. S. 1878, gives the county board power "to provide an official seal for the county, etc. . . . The official seals of the several county boards now in use shall be deemed to be the official county seals of the several counties respectively, until others shall be provided." Under this provision we must presume that the clerk, in executing the deed, performed his duty and affixed the seal of the county to the deed. If he in fact affixed a seal formerly used by the county board of said county, such seal will be presumed to be the only seal the county had, until proof be made that the county board had procured another county seal, as authorized by the provisions of said sec. 669, R. S. 1878.

It is alleged by the learned counsel for the appellant that the certificates offered in evidence, with the stamped assignments of the clerk thereon, show that they had never been assigned by the county, and so show the deed void for want of authority in the county clerk to issue a deed to any one

other than the county.  The objection to the assignment is that it was not in the proper handwriting of the clerk and was therefore void.  We think the county clerk may, under the statute, assign a tax certificate by putting his name on the back thereof with a stamp.  If the name of the county clerk, with his official character added, be stamped by him on the back of the certificate with the intent to assign the same, it is a compliance with the statute which authorizes him to assign the same " by writing his name in blank on the back thereof, with his official character added."  The statute does not require in express terms that the county clerk shall indorse on the back of the certificate his written signature, and so does not come within the terms of that part of subd. 19, sec. 4971, which provides that " in all cases where the written signature of any person is required it shall be in the proper handwriting of such person," etc.  The statute requires that " he shall by writing his name," etc., assign, and the question is whether a person may not write his name, within the meaning of these words, in any other way than with a pen, by forming the letters thereof separately.  Does he not, when he takes a stamp upon which the letters composing his name are fixed in their proper order, and especially if the letters on the stamp are a fac-simile of the letters as they would be formed by him if made there with an ordinary pen, and stamps his name with one motion of his hand, as effectually write his name as though he made the letters separately?

We are clearly of the opinion that such stamping the name is writing the same, within the meaning of the statute; and we are more strongly convinced of the propriety of so holding, from the fact that the same statute declares that the words " written " and " in writing " may be construed to include printing, engraving, lithographing, and any other mode of representing words and letters.  It is true, this definition does not in express terms define the words " by writ-

ing," and so it may be said it is not applicable, and has no force in defining the words "by writing." We may, however, we think, consider the definition given by the statute to the words "written" and "in writing" as showing the liberal construction which should be given to all words or terms of a like character where used in the statute. It cannot, we think, be doubted that if it were not for the statute which declares that "when the written signature of any person is required by law, it shall always be the proper handwriting of such person," etc., the statute which requires him to assign the certificates "by writing his name on the back thereof," would be complied with by placing it on with a stamp, as was done in this case. See *Barnard v. Heydrick*, 49 Barb., 62; *Schneider v. Norris*, 2 Maule & S., 286; *Brown v. Butchers' & Drovers' Bank*, 6 Hill, 443; *Saunderson v. Jackson*, 2 Bos. & P., 238; *Hubert v. Turner*, 11 L. J. R. (N. S.), C. P., 78; *Johnson v. Dodgson*, 6 L. J. R. (N. S.), Exch., 185; *Lobb v. Stanley*, 13 L. J. R. (N. S.), Q. B., 117.

In the case of *Potts v. Cooley, ante*, p. 45, an assignment was held sufficient when the official character of the clerk was printed after the written name. All the cases seem to hold that when a party places his name to an instrument in writing with intent to be bound thereby, it is immaterial whether the name be printed, written, or stamped; either will answer the purpose, and is a compliance with a statute requiring his subscription or signature. If this be so, then we cannot say that such statute necessarily requires the written signature of the clerk, and so does not come within the provision above quoted. We think the cases of *Scott v. Seaver*, 52 Wis., 184, and *Mezchen v. More*, 54 Wis., 214, cover the point made by the learned counsel for the appellant, and are conclusive that the objection to the assignment is not well taken. The argument that it would tend to fraudulent assignments of certificates if allowed, does not seem to us to have any great force. As was said by LE BEANE, Justice,

in *Schneider v. Norris, supra*, " such stamping, if required to be done by the party or by his authority, would afford the same protection as signing." See, also, remarks of Lord ELLENBOROUGH in the same case.

If it be a fact, as is said by the learned counsel for the appellant, that there is no such phrase in the revised statutes as " written signature," such fact is not conclusive that we must apply the definition to other phrases which might be construed to include as one of their definitions the term " written signature," for at least two reasons: (1) This chapter on the construction of statutes does not apply to the revised statutes alone, but to any and all other statutes of the state then in existence; and (2) it applies to all statutes which may hereafter be passed by the legislature of this state. There is, perhaps, a third reason of more weight for not restricting the words " by writing his name " to a written signature, which must be in the proper handwriting of the clerk. Unless we confine this construing statute to the cases where a " written signature " is expressly required, or to a case where no other reasonable construction can be given to the language used, we will open the door very wide, and it will be difficult to adopt any rule of construction which would determine in what cases the proper handwriting of the party was required, and thereby greatly interfere with and endanger the methods of doing business in the state.

If the only object of the plaintiff, in introducing the certificates showing the stamped assignments thereof, was to show that such assignments were insufficient to pass the title to any one, as assignee, when delivered to him by the clerk, this exclusion of the certificates did not prejudice him, and it was not, therefore, error to exclude them on that ground. But it is insisted by the learned counsel for the appellant that the offer of evidence went to the extent of offering to show that when the clerk placed his stamp upon said certificates it was for the purpose of assigning them to the town of Sevas-

topol, and that when he so stamped the same he delivered them to the agent of said town, and that no other assignment was ever made of said certificates except the one so made to the town of Sevastopol. It is disputed by the counsel for the respondent that such offer of evidence was made by the appellant. From an inspection of the record we are inclined to think that such was, in substance, the offer of the appellant on the trial. The learned counsel for the respondent contend that if such was the extent of the appellant's offer of evidence it was not error to reject the same. The argument in favor of this proposition is based upon two grounds: *First*, that sec. 7, ch. 334, Laws of 1878, barred the plaintiff from setting up any irregularity in the proceedings, for the purpose of avoiding the tax deed, which occurred previous to the execution of the deed, except, perhaps, that the sufficiency of the notice required to be given to the occupant of the lands might be inquired into; and, *second*, that any person holding a tax certificate, indorsed in blank by the county clerk as required by law, was entitled to a tax deed thereon, and if there was any question as to the ownership of the certificate such question could not be raised by the original owner of the land, and did not affect the validity of the tax deed as between such owner and the person claiming under the tax deed. We are unable to agree with the learned counsel for the respondent on either of these propositions.

Sec. 7, ch. 334, Laws of 1878, reads as follows: " Every action or proceeding to set aside any sale of lands for the nonpayment of taxes, or to cancel any tax certificates, or to restrain or prevent the issuing of any tax deed or any tax certificate, or to set aside and cancel a tax deed, shall be commenced within nine months after the making of such sale, date of such certificate, or recording of such tax deed, as the case may be, and not thereafter: *provided* that in the case of sales, tax certificates, and tax deeds heretofore made, issued,

or recorded, such action or proceeding, if not already barred, may be brought within nine months after the publication of this act, and not thereafter." There is no dispute that said sec. 7 was in force and applied to the certificates in question. Great stress is laid upon the words " or to restrain or prevent the issuing of any tax deed or any tax certificate." It is said that in order to give any force to these words they must be extended so as to cover all irregularities up to the time of the issuing of the deed. The argument is that if there be no irregularity in the proceedings previous to and including the issuing of the tax certificate, no irregularity between that time and the time of issuing the deed can avoid it.

We think this is not the correct construction of this statute of limitations. The section contains two limitations: *First*, a limitation of nine months from the date of the sale or certificate within which the owner of the lands sold for the nonpayment of taxes may avoid the sale and certificate by showing irregularities in the proceedings previous to the sale and certificate; and a *second* limitation of nine months after the deed within which the owner may attack the validity of the deed for any irregularities occurring after the certificate is issued. The words " every action or proceeding to set aside any sale of lands for the nonpayment of taxes, or to cancel any tax certificate, or to restrain or prevent the issuing of any tax deed or any tax certificate," all point to the same result, viz., avoiding the sale and certificate. The words are descriptive of the kind of action which might be brought to accomplish the same purpose, and the limitation is made to apply to all. An action might be brought demanding only the setting aside of the sale, or it might demand the setting aside of the sale, and if the certificate had been issued it might demand the cancellation of the certificate, or the demand for relief might be for the cancellation of the sale and certificate, and for an injunction against the issuing of a tax deed on the certificate. Such relief might

be required when the owner of the certificate was unknown, in order to protect the original owner in his title.

It seems very clear to us that this statute of limitations was not intended to cure defects and irregularities in the proceedings which might occur after the time limited for bringing the action. Statutes of limitation are intended to cure defects which could be taken advantage of by action brought within the time limited, and not to cure defects which did not then exist, and which the limitation could not cure. This certainly is a very good general rule to apply to such statutes, and it would take very clear language to extend its curative effects to things which did not occur previous to the time limited for bringing the action. Such is the construction which has been given to this statute by this court. See *Mead v. Nelson*, 52 Wis., 402; *Clarke v. Lincoln County*, 54 Wis., 578; *S. C.*, id., 580; *Smith v. Todd*, 55 Wis., 459.

The second reason urged for rejecting the evidence offered has been so recently decided by this court, after hearing a full and exhaustive argument of the question, and after mature deliberation by this court, that I do not feel called upon to restate the reasons which induced this court to determine, as it did in the case of *Smith v. Todd*, that the original owner might avoid a tax deed upon his land by showing that it had been issued to a person who did not hold the certificate of sale by an assignment thereof in the form prescribed by law. Adhering to the decision in the case of *Smith v. Todd*, it seems to follow as a logical conclusion that the tax deed must be void as to the original owner if it be issued to one to whom it was never assigned, either in the form prescribed by the statute or in any other form. This would have been the effect of the evidence offered by the plaintiff on the trial. As we understand it, his offer was to show that the only assignment ever made by the county was to the town of Sevastopol, and as this court has held that such assignment was void on account of the incapacity of the town to own tax certificates,

the ownership of the certificates remained in the county when the deed was issued, and therefore the deed issued to the defendant was void, he not being the purchaser at the tax sale or the assignee of such purchaser. The effect of an assignment of a tax certificate to a town, is more fully discussed in the opinion filed in the case of *Jackson v. Town of Jacksonport, post,* p. 310.

The objection taken by the plaintiff to the sufficiency of the affidavit of non-occupancy, we think was properly overruled. It is said the affidavit was made before the application for the deed, and therefore it might be true that the land had not been occupied for thirty days within the last six months when the affidavit was made; but it might also have been true that it had been so occupied for thirty days when the deed was applied for. The affidavit was made March 9th, and on March 10th the deed was issued. The affidavit says that the premises were not occupied at the time the affidavit was made, and had not been for thirty days within the last six months. The affidavit clearly excludes the possibility that the lands could have been occupied for thirty days within said six months, on the 10th, when the deed was issued. The other objection taken to the sufficiency of the affidavit is extremely technical and ought not to prevail. We think it shows with sufficient certainty that no one of the parcels of land described in the deed had been occupied for thirty days within six months next preceding the date of the deed. This is the construction which would ordinarily be given to the language used. If in fact any one or more of the tracts had been occupied for thirty days within said six months, that fact could easily be shown, and, when shown, would undoubtedly defeat the deed. In the absence of any such evidence, or an offer to prove the fact, the affidavit should be held sufficient evidence of such non-occupancy.

We think the circuit judge erred in excluding the evidence offered to prove an assignment of the tax certificates on

which the tax deed was issued to the town of Sevastopol, and that no other assignment of them had ever been made, and for that error the judgment must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.