## CUMMINGS v. STATE *ex rel.* WALLOWER.

No. 7131. Opinion Filed May 18. 1915.

Rehearing Denied June 15, 1915.

(149 Pac. 864.)

1. **CORPORATIONS—"Stockholders"—Adoption of By-Laws.** By section 1227, Rev. Laws 1910, the persons signing articles of incorporation, and their associates and successors, shall be a body politic and corporate. by the name and for the purposes stated in said articles. The subscribers thereto are therefore "stockholders." and the fact that they have not paid for the stock subscribed, or that stock certificates have not issued to them, does not affect their right to adopt by-laws.

2. **SAME—"Book of By-Laws."** By-laws typewritten on a sheet of paper and pasted in a book kept in the office of the corporation. though the book be not designated as provided by statute, is a sufficient compliance with section 1248, Rev. Laws 1910, providing that "all by-laws adopted must be certified by a majority of the directors and secretary of the corporation and copied in a legible hand in some book kept in the office of the corporation. to be known as 'the book of by-laws,' and that no by-laws shall take effect until so copied."

3. **SAME—By-Laws—Typewritten Record.** The statute last mentioned should be construed in connection with section 2947 of the Revised Laws of 1910, providing that writing (with the exception named therein) "may be made in any manner"; thus authorizing a writing such as that involved to be typewritten as well as traced by hand with pen or pencil.

4. **SAME—Certification—Necessity.** While section 1248 requires that all by-laws be certified "by a majority of the directors and secretary of the corporation" and copied in the manner set out in the second paragraph, it does not undertake to make the by-laws ineffective unless so certified; and such certification is not required in an action between directors of the company charged with knowledge of the by-laws and their contents.

5.   **SAME—"By-Law"—Purpose.** The function of a "by-law" is to prescribe the rights and duties of the members with reference to the internal government of the corporation, the management of its affairs, and the rights and duties existing between the members inter se.

6.   **CORPORATIONS—Directors — Acting by Attorney — Call of Meeting.** A director of a private corporation may empower an agent or attorney for him and in his name to make and serve a demand for a special meeting of a board of directors.

7.   **MANDAMUS—Acts of Corporate Officers—Call of Directors' Meeting.** Mandamus will lie to compel the president of a corporation to call a special meeting of the board of directors, there being a valid by-law requiring the issuance of the call, and where the necessary demand therefor has first been made.

8.   **SAME—Defenses.** The right of the board of directors to discharge plaintiff in error as manager of the corporation cannot be considered a defense to an action for mandamus to compel the calling of a directors' meeting, though called for the purpose of considering his removal.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*Edward Dewes Oldfield, Judge.*

Suit for mandamus by the State, on relation of E. Z. Wallower, against E. D. Cummings, as president of the Skirvin Operating Company, to compel respondent to call a meeting of the board of directors of the corporation. From a judgment directing the issuance of a peremptory writ, respondent brings error. Affirmed.

*Choate & Choate* and *W. K. Snyder,* for plaintiff in error.

*McAdams & Haskell,* for defendant in error.

SHARP, J. The board of directors of the Skirvin Operating Company, an Oklahoma corporation, was, on the date of the institution of the present action, composed of E. D. Cummings, E. Z. Wallower, and W. B. Skirvin. E. D. Cummings was president and treasurer, E. Z. Wallower vice president, and W. B. Skirvin secretary, of said company. On January 7, 1915, there was served on said E. D. Cummings, as president of said Skirvin Operating Com-

pany, a written notice signed by E. Z. Wallower, acting through his duly authorized agents and attorneys, McAdams & Haskell, demanding that, as president of said corporation, said Cummings forthwith call a special meeting of the board of directors, to convene at the office of the corporation at Oklahoma City at the earliest possible date, allowing only the time necessary to give to each director three days' notice of the time, place, and purpose of such meeting by letter addressed to his last-known post-office address, as prescribed by the alleged by-laws of the corporation. The purpose for which the meeting was desired, it was said, was:

"To consider the question of removal and discharge of the present manager of the corporation, and to remove and discharge said manager, and elect a new manager if, in the judgment of the board of directors, such action be to the best interest of the corporation. Also to consider the business and affairs of the company generally, and to take such action concerning the same as may be deemed advisable by the board."

Cummings refused to call the meeting, and thereupon action was filed in the district court and an alternative writ of mandamus issued. The case coming on to be heard, the relator introduced his evidence and rested, whereupon the respondent demurred to the evidence, which demurrer being overruled, he then moved the court for judgment in his favor on the relator's evidence, which motion was likewise overruled, and an order made and entered directing that a peremptory writ of mandamus issue, as prayed for by the relator, commanding the respondent, E. D. Cummings, as president of the Skirvin Operating Company, to call a meeting of the board of directors of said corporation, to convene at the office of said corporation at Oklahoma City, Okla., within a time named. From the judgment, the respondent has prosecuted an appeal to this court.

Relator's right to the writ is rested principally upon an alleged by-law of the corporation, providing that the president shall call such special meetings of the board of directors at any time upon the written demand of any one director; the purpose and object of the meeting being stated. On the part of the respondent, it is vigorously asserted that no such by-law was ever legally adopted by the stockholders of the corporation; that, such being the case, the calling of a special meeting of the board of directors by the president was discretionary on his part, and could not be controlled by the writ of mandamus.

Section 1246, Rev. Laws 1910, provides that every corporation formed under chapter 15 of the statutes must, within one month after filing articles of incorporation, adopt a code of by-laws for its government, not inconsistent with the laws of the United States or of this state, and further provides that:

"The assent of stockholders representing a majority of all the subscribed capital stock   *   *   *   is necessary to adopt by-laws, if they are adopted at a meeting called for that purpose; and in the event of such meeting being called, two weeks' notice of the same, by advertisement in some newspaper published in the county in which the principal place of business of the corporation is located,   *   *   *   must be given.   *   *   *   The written assent of the holders of two-thirds of the stock   *   *   *   shall be effectual to adopt a code of by-laws without a meeting for that purpose."

At the trial there was introduced, over the objection of the respondent, certain purported records of the company, which were kept in a book called "Secretary's Record and Stock Account." These records consisted of typewritten pages pasted into said book. Included in these records is a stock subscription for one share each of the capital stock of the Hotel Operating Company, signed by C. L. Webb, J. Robbins, and I. M. Canfield. Afterwards,

by amended articles of incorporation, the name of the corporation was changed to the Skirvin Operating Company. At a meeting held on August 6, 1913, as shown by the records, there were present all of the subscribers to the stock, namely, C. L. Webb, J. Robbins, and I. M. Canfield, all of whom waived notice of the call for the meeting and participated therein throughout. Among other business transacted at said meeting was the acceptance of the statutory grant of corporate authority, as shown by the certificate of incorporation, isued by the Secretary of State, the election of Webb, Robbins, and Canfield, as directors, after which the following appears:

"Thereupon the chairman produced a 'set' of by-laws which she stated she had caused to be prepared for governing the business of the company and of the directors and stockholders of the company. It was thereupon moved that said by-laws be adopted and that the same be ordered to be recorded in a book of by-laws and be recorded at length in the minutes of the meeting. Said motion was unanimously adopted, and the said by-laws are in words and figures as follows:"

Then follow *seriatim* the by-laws so adopted, those pertinent to the issues involved being as follows:

"The president may call special meetings of the board of directors at any time, and shall call such special meetings upon the written demand of any one director stating the purpose and object of the meeting.

"Notice of special meeting shall state the purpose for which the same is called. Notice of meetings of stockholders and directors shall be given by letter, postage prepaid, deposited in the United States mails, and addressed to the last-known postoffice address of stockholders or directors as the case may be.

"Three (3) days' notice shall be given of special meetings of the board of directors.

"The officers of the company shall perform such duties as usually appertain to like offices in like companies."

Many objections going to the validity of these by-laws are urged by counsel for plaintiff in error, but those principally relied upon, as stated by counsel, are: (1) That the by-laws were never legally adopted according to the formalities prescribed by our statute; (2) that they were not adopted by stockholders; (3) were never entered in a book of by-laws; and (4) were never certified.

The book containing the by-laws was produced in court by the respondent Cummings, in obedience to a *subpoena duces tecum* served upon him to appear and bring with him the minute book and book of by-laws of the Skirvin Operating Company, which book, Mr. Cummings testified, was obtained by him in the private office of the company. In fact, the authenticity of the records produced is not questioned. That the by-laws were not adopted at a stockholders' meeting cannot be sustained. While it is true that, at the meeting of August 6th, Webb, Robbins, and Canfield are mentioned as subscribers to the articles of incorporation, which fact further appears from their separate subscription to the capital stock of the corporation, at the meeting of directors held on the same day, and immediately following the adjournment of the stockholders' or subscribers' meeting, the former meeting is referred to as "the stockholders' meeting of the Hotel Operating Company." At the time, the personnel of the shareholders and the board of directors was the same. *People ex rel. Wallace v. Sterling,* 82 Ill. 457; *Manufacturers, etc., Co. v. Landay,* 219 Ill. 168, 76 N. E. 146. Whether at the time, certificates of stock had been issued to the subscribers to the articles of incorporation is immaterial. Such was not necessary to constitute them stockholders. Section 1227, Rev. Laws 1910, provides that the persons signing the articles of incorporation, and their associates and successors, shall be a body politic and corporate, by the name and for the purposes stated in the articles; while

by section 1234 a subscription to the stock of a corporation about to be formed is to be held for the benefit of a corporation when it is formed, and may be enforced by it.. The moment the conditions required by law as preliminary to the granting of the charter to the corporation were complied with, the subscribers to its stock became stockholders, entitled as such to all the rights of such, and at the same time their liability to pay the amount of their subscription became fixed and absolute. 1 Cook on Corporations (6th Ed.) sec. 192; 10 Cyc. 389; *Cartwright v. Dickinson*, 88 Tenn. 476, 12 S. W. 1030, 7 L. R. A. 706, 17 Am. St. Rep. 910. As between themselves and the succeeding stockholders and directors, their failure to pay for their stock, if indeed such were a fact, and to have stock certificates issued and delivered, was, in the determination of their status, of no consequence. No attack is made on the validity of the articles of incorporation; instead, Cummings' rights, as asserted by him, arose by virtue of his subsequent acquirement of stock in said corporation, and his election as a director and president of the corporation on March 28, 1914, and his subsequent election as a director and president on October 14, 1914. The mere fact that the minutes of the meeting of August 6th referred to Webb, Robbins, and Canfield as subscribers to the articles of incorporation does not detract from their legal status. as shareholders, and cannot be invoked to affect the validity, in this respect, of the adoption of the by-laws. The by-laws, as shown by the secretary's minutes, were adopted by the unanimous vote of the shareholders.

The objections that the by-laws were never entered. in a book known as the "Book of By-Laws" and were never certified may be considered together. By section 1248, Rev. Laws 1910, it is provided that all by-laws adopted by a corporation must be certified by a majority of the directors and the secretary of the corporation, and

copied in a legible hand in some book in the office of the corporation, to be known as the "Book of By-Laws," and that no by-laws shall take effect until so copied, and that the book shall be open to the inspection of the public during the office hours of each day except holidays. As already seen, the by-laws were copied into a book designated "Secretary's Record and Stock Account," were on typewritten sheets, and were pasted into the book. We do not think the fact that the by-laws were typewritten, and were kept in the manner indicated, in a record bearing a different designation from that named in the statute, renders them void. Thompson on Corporations (2d Ed.) sec. 975; *Bornstein v. District Grand Lodge,* 2 Cal. App. 624, 84 Pac. 271.

A "by-law" has been defined to be a permanent and continuing rule for the government of the corporation and its officers. *North Milwaukee Townsite Co. v. Bishop,* 103 Wis. 492, 79 N. W. 785, 45 L. R. A. 174. Other definitions, differing not materially from the above, may be found in Thompson on Corporations (2d Ed.) sec. 976. The function of a by-law, as here involved, is to prescribe the rights and duties of the members with reference to the internal government of the corporation, the management of its affairs, and the rights and duties existing between the members *inter se.*

Section 1248 of the statutes, prescribing that the by-laws shall be copied in a legible hand in a book of the corporation kept for that purpose, was taken from the Dakota statutes (Comp. Laws Dakota 1887, sec. 2922). This section became a law in that state February 16, 1877 (Rev. Codes Dakota 1877; Civ. Code, sec. 405). This was before the day of the typewriter, and at a time when records were made by the handwriting of the draftsman. Section 2947, Rev. Laws 1910, provides that writing may be made in any manner, except that when a person en-

titled to require the execution of a writing demands that it be made in ink it must be so made.  See, also, sections 2828, 5539.

Under section 1094 of the General Statutes of Connecticut of 1887, it was provided that:

"In actions against the representatives of deceased persons, no acknowledgment or promise shall be sufficient evidence of a new or continuing contract to take the case out of the statute of limitations, unless the same be contained in some writing made or signed by the party to be charged thereby."

In giving effect to this statute, it was said by the court, in *Deep River National Bank's Appeal,* 73 Conn. 341, 47 Atl. 675:

"In the absence of any provision requiring such acknowledgment to have been written or subscribed by the hand of the deceased person, the meaning of the word 'writing,' as used in this statute, is not to be limited to words traced with a pen or pencil; nor the words 'writing made  *  *  *  by the party to be charged thereby,' to writings made by the hand of such person; nor the words 'writing  *  *  *  signed' by such person, to writings subscribed by the deceased with his own hand."

It was further said in the course of the opinion:

"Proof that the letters containing the alleged acknowledgments were dictated by the deceased to a stenographer, and were by the latter, at the direction of the deceased, typewritten and signed with the deceased's name by means of a rubber stamp, was proof:   (1) That they were writings *(Henshaw v. Foster* [Mass.] 9 Pick. 312, 318), since 'typewriting is a substitute for and the equivalent of writing'; (2) that they were made by the deceased, since he directed them to be made, and adopted them after they were made, by directing them to be stamped with his name; and (3) that they were signed by him, since, in the absence of any express or implied requirement of law that one shall subscribe a writing with his own hand, he may properly sign it by means of such a stamp used by himself or by another at his direction. *Schneider v. Norris,* 2 M. & S. 286; *Streff v. Colteaux,* 64 Ill. App. 179; *National*

*Accident Society v. Spiro* [78 Fed. 774, 24 C. C. A. 334], 47 U. S. App. 293; *Hamilton v. State,* 103 Ind. 96 [2 N. E. 299, 53 Am. Rep. 491] ; *Chapman v. Limerick,* 56 Me. 390; *Dreutzer v. Smith,* 56 Wis. 292 [14 N. W. 465]."

In *Hunt v. Dexter Sulphite P. & P. Co.,* 100 App. Div. 119, 124, 91 N. Y. Supp. 279, 283, it was held that the service of a typewritten notice under the Employers' Liability Act was the serving of a sufficient notice in writing. The opinion in part reads:

"Typewriting has largely taken the place of handwriting, and may well be considered as handwriting. It would be too strict a construction of the statute to hold this notice invalid because in typewriting instead of handwriting."

Other cases in harmony with these views are: *Benson v. McMahon,* 127 U. S. 457, 8 Sup. Ct. 1240, 32 L. Ed. 234; *Pelton v. Ottawa County Sup'rs,* 52 Mich. 517, 18 N. W. 245; *Frazer v. State,* 159 Ala. 1, 49 South. 245; *Sears v. Sears,* 77 Ohio St. 104, 82 N. E. 1067, 17 L. R. A. (N. S.) 353, 11 Ann. Cas. 1008.

The main purpose of the statute was served when the by-laws in legible form were entered in some book kept for that purpose in the office of the corporation, and when this was done the statute made the by-laws effective.

Until after the institution of the present action, the by-laws were not certified by a majority of the directors and the secretary of the corporation, as provided in section 1248 of the statute. While the statute ordains the certification of the by-laws, it further provides, "and no by-laws shall take effect until so copied," referring to the requirement that the by-laws shall be copied in a legible hand in some book kept in the office of the corporation. Whatever the purpose of the distinction may be, the penalty goes only to a failure to copy, and not a failure to certify.

As we have seen, the statute prescribes that corporations shall adopt by-laws. Section 1247 provides that by-laws may provide for the time, place, and manner of calling and conducting the meetings. The by-law adopted gave to any one director complying with its provisions the right to demand that the president call a special meeting of the board of directors, upon notice. The duty owing by Cummings, as president, was one in which he was vested with no discretionary powers. Duties of the character involved, being unattended with any degree of official discretion, are regarded as ministerial in their nature, and the officers at whose hands their performance is required are, as to such duties, ministerial officers. Courts have steadily refused to lend their extraordinary aid by mandamus to control in any degree the exercise of official discretion, wherever vested, yet as to official duties of a ministerial character, unattended with the exercise of any degree of discretion, and absolute and imperative in their nature, the law is otherwise. *Norris v. Cross,* 25 Okla. 287, 105 Pac. 1000; *Kimberlin v. Commission,* 104 Fed. 653, 44 C. C. A. 109. Courts may grant the writ of mandamus to compel officers, whose duty it is to call meetings, to make such call in case they neglect or refuse to do so. Thompson on Corporations (2d Ed.) sec. 5747; High's Extraordinary Legal Remedies, sec. 80; *People ex rel. v. Cummings,* 72 N. Y. 433; *McNeely v. Woodruff,* 13 N. J. Law, 352; *Bassett v. Atwater,* 65 Conn. 355, 32 Atl. 937, 32 L. R. A. 575, and note.

The by-law in question having made it the duty of the president to call special meetings upon the written demand of any director, and due demand having been made, and the president having refused to call such meeting, the performance of such duty by him may properly be enforced by mandamus.

Another objection is that Wallower could not confer authority on another to make a formal demand in his name that the president call a special meeting of the corporation as provided by the by-laws. This, it is said, is the equivalent of giving a proxy to represent him as a director. The formal demand made on Cummings to call a special meeting of the directors was signed by "E. Z. Wallower, by McAdams & Haskell, his agents and attorneys." That express authority to make this demand in the manner indicated was given, is shown by a telegram from Wallower to McAdams & Haskell, dated January 7, 1915, which reads:

"You are hereby authorized to demand calling of directors' meeting Skirvin Operating Co. in my behalf and apply to federal court for mandamus if refused."

There can be no question of Wallower's right to delegate authority to prepare and serve this notice in his name. It appears that the respondent Cummings, in addition to being president of the company, was its manager, and that, on account of a disagreement over the management of the hotel property, the meeting was desired for the purpose of considering the question of his removal and discharge as manager. The purpose of the meeting, as evidenced by the notice, was only to consider this question, and, in addition, to consider the business and affairs of the company generally. As to whether the board, when convened, had the authority to discharge Cummings as manager, that question has no place in this action, and need be given no further consideration.

The judgment of the trial court in directing the issuance of a peremptory writ of mandamus, commanding the respondent, E. D. Cummings, as president of the Skirvin Operating Company, to call a meeting of the board of directors of said company, was properly issued, and the judgment of the trial court is affirmed.

All the Justices concur.